**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

**LOCAL UNION NO. 44, SHEET METAL** :
**WORKERS' INTERNATIONAL** :
**ASSOCIATION, NORTHEASTERN** :
**PENNSYLVANIA,** :
:
           **Plaintiff** :
:   **3:CV-00-1060**
  **vs.** :
:   **(CHIEF JUDGE VANASKIE)**
**ACA GREENHOUSES, INC.,** :
:
           **Defendant** :

## MEMORANDUM

This case is before this Court on a defense motion to vacate the second default judgment entered against it. While the equities weighed in favor of granting Defendant ACA Greenhouses, Inc. ("ACA") relief from the first default judgment, its pattern of dilatory behavior and flagrant disregard of a court order compel the denial of its motion to vacate the second default judgment.

## I. BACKGROUND

Plaintiff, Local 44 Sheet Metal Workers' International Association, Northeastern Pennsylvania (hereinafter sometimes referred to as the "Union"), is a labor organization with an office in Wilkes-Barre, Pennsylvania. The Union represents for purposes of collective bargaining employees engaged in an "industry affecting commerce," within the meaning of the Labor and Management Relations Act of 1947, as amended, 29 U.S.C. §§185, et seq.

Defendant ACA is a New Jersey corporation with a facility in Brigantine, New Jersey. It is a glazing contractor, and George Riker is its president.

Effective May 1, 1996, Mr. Riker, on behalf of Staffco Greenhouses, Inc. ("Staffco"), executed a collective bargaining agreement (the "CBA") with the Union. Staffco, like ACA, maintains a facility in Brigantine, New Jersey. Riker is also Staffco's President.

The Union contends that ACA was also a party to the 1996 CBA. ACA denies this contention.

When Riker, on behalf of ACA, refused to execute a new collective bargaining agreement that went into effect on May 1, 1999, the Union invoked the grievance procedures of the 1996 CBA. Riker, as President of ACA, was notified that a hearing would be conducted by a Local Joint Adjustment Board on January 26, 2000. Maintaining that ACA was not a party to the 1996 CBA, Riker did not participate in the arbitration proceeding.

At the arbitration hearing, the Union presented evidence suggesting that ACA was a party to the 1996 CBA. The Local Joint Adjustment Board ruled in favor of the Union, and directed ACA to sign the May 1, 1999 collective bargaining agreement and pay a fine of $1,000 within thirty (30) days. The Local Joint Adjustment Board further ordered that, if ACA did not comply with its directives within thirty (30) days, an additional fine of $100 per day would be assessed for each day of ACA's non-compliance.

The Local Joint Adjustment Board decision was rendered on February 11, 2000. ACA

failed to comply with the terms of decision.  On June 14, 2000, the Union brought this action to enforce the arbitration award.

ACA was served with process on October 26, 2001.  It failed to answer or reply to the Complaint in a timely manner.  Instead, in a letter to the Court dated November 9, 2000, Mr. Riker wrote that ACA "denies all allegations in complaint by Local #44 Sheet Metal Workers' Union."  (Dkt. Entry 5.)  It does not appear that this letter was served on the Union.

On February 21, 2001, the Union moved pursuant to Rule 55 of the Federal Rules of Civil Procedure for the entry of default judgment for failure of ACA to answer the Complaint. Magistrate Judge Blewitt, to whom this case had been assigned for pretrial management purposes, issued a Report and Recommendation, proposing that default judgment be denied based upon his view that Mr. Riker's letter to the Court of November 9, 2000 could be considered an answer to the Complaint.  The Union objected to the Report and Recommendation.  (Dkt. Entry 13.)

Because Mr. Riker could not act on behalf of the corporate Defendant in this court proceeding, the Union's objection to the Report and Recommendation was sustained (Dkt. Entry 16.)  Accordingly, on August 31, 2001, judgment was entered against ACA in the liquidated amount requested by the Union.  (Dkt. Entry 18.)

ACA did not take any action with respect to the default judgment until August 30, 2002, one day short of a year after the judgment had been entered.  Now represented by Attorney

3

Carl Greco, ACA moved to vacate the default judgment. Although finding the lengthy delay in moving to vacate the judgment "troubling," this Court granted the relief requested. (Dkt. Entry 35.) ACA was directed to answer the Complaint within 20 days of the March 26, 2003 Order vacating the default judgment.

ACA, through Attorney Carl Greco, timely answered the Complaint as required by the March 26, 2003 Order. A case management conference was conducted on May 13, 2003, and the Court issued an order calling for conclusion of fact discovery by August 31, 2003, the filing of dispositive motions by September 30, 2003, and a trial to commence in December of 2003. (Dkt. Entry 42.)

On September 26, 2003, the Union moved for summary judgment. ACA, still represented by Attorney Greco, filed a brief in opposition to the summary judgment motion. By Memorandum and Order dated September 29, 2004, the summary judgment motion was denied. (Dkt. Entry 56.)

A telephonic scheduling conference was conducted on November 1, 2004. As a result of that conference, the parties were given until January 31, 2005 to complete the discovery apparently necessitated by the denial of the summary judgment motion. This case was placed on the Court's March, 2005 trial list.

On December 23, 2004, Atty. Greco moved for leave to withdraw as counsel for ACA. In his Motion, Atty. Greco stated that ACA had failed to pay for the legal services rendered

4

since August of 2002. Attorney Greco represented that ACA had been warned that failure to remit payment would result in his withdrawal from the case. Despite these warnings, ACA did not take action to assure continued representation in this matter.

By Order dated January 3, 2005, Atty. Greco's motion for leave to withdraw as counsel was granted. (Dkt. Entry 62.) The order directed ACA to have counsel enter an appearance on its behalf no later than January 31, 2005. The Order further provided that, if ACA failed to comply, the Union could seek appropriate relief, including default judgment.

ACA did not comply with the January 3, 2005 Order. Nor did it seek an enlargement of time within which to do so.

On February 1, 2005, the Union requested entry of default. (Dkt. Entry 63.) Default was entered on February 2, 2005. (Dkt. Entry 65.) Also on February 2, 2005, the Union moved for default judgment. The Court scheduled a hearing on the default judgment motion for February 10, 2005. The order scheduling the hearing specified that failure of ACA to appear with counsel at that time "will result in the entry of judgment in the amount requested by plaintiff." (Dkt. Entry 66.)

No entry of appearance was made on behalf of ACA by February 10, 2005. Nor did it appear for the hearing. As a consequence of ACA "having defaulted for failure to appear, plead or otherwise defend, Judgment [was] entered in favor of Plaintiffs and against Defendant in the amount of $171,882.50 plus $100 per day each and every day after February 1, 2005, and until

said judgment is satisfied and Defendant complies with all terms of the Adjustment Board's decision, plus attorney's fees." (Dkt. Entry 67.)

On February 15, 2005, entries of appearance on behalf of ACA were made by attorneys in the firm of Wolf Block Schorr & Solis-Cohen. No action was taken on behalf of ACA with respect to the default judgment, however, until more than one month later. On March 25, 2005, ACA moved to vacate the default judgment. (Dkt. Entry 71.) The motion to vacate has been fully briefed, and the matter is ripe for resolution.

## II.   **DISCUSSION**

"'[T]he basic purpose of default judgment is to protect parties from undue delay-harassment.'" New York v. Green, 420 F.3d 99, 108 (2d Cir. 2005). "A court may set aside any default that has been entered for good cause shown, and if a judgment has been entered on the default, the court is authorized to set the judgment aside in accordance with the provisions of Rule 60(b)." Id. at 104. Under Federal Rule of Civil Procedure 60(b), a court may relieve a party from a final judgment based on such matters as mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud or other misconduct of an adverse party, or any other reason justifying relief from the operation of the judgment.

In this case, the parties are in agreement that the exercise of discretion afforded a trial court in ruling on a request for relief from a default judgment is governed by three factors: the culpability of the defendant; the prejudice to the plaintiff; and the existence of a meritorious

defense.  See Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 419-20 (3d Cir. 1987).  A district court should also consider whether a sanction less drastic than default judgment would be effective.  See Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3d Cir. 1987).  In view of the general disfavor with adjudications by default, doubts in a close case should be resolved in favor of setting aside the judgment.  Zawadski de Bueno, 822 F.2d at 420.

"Culpable" conduct for purposes of determining whether to grant relief from a default judgment requires willfulness, recklessness or bad faith.  Billy Steinberg Music v. Bonin, 129 F.R.D. at 488, 491.  (M.D. Pa. 1990).  This standard is clearly met in this case.  ACA was forewarned by its former counsel that he would withdraw from this case if ACA failed to take care of its financial obligations.  After former counsel was allowed to withdraw, ACA was specifically directed to secure representation by January 31, 2005, or face the prospect of a second default judgment.  ACA did not secure counsel within the prescribed period, nor did it seek an enlargement of time within which to do so.  This case was scheduled for a trial in March, 2005, and ACA's dilatory conduct necessarily interfered with the ultimate conclusion of this unnecessarily protracted litigation.

Failure to comply with a court directive to obtain replacement counsel has been regarded as sufficient to warrant entry of default judgment under Rule 55.  See Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 918 (3d Cir. 1992); Floyd v. Black Swan Shipping Co., No. Civ.A. 98-4207, 2002 WL 1676311, at *1 (E.D. Pa. July 18, 2002).  Thus, for example, in

7

Eagle Associates v. Bank of Montreal, 926 F.2d 1305, 1310 (2d Cir. 1991), the court ruled that it was appropriate to enter default judgment when the defendant willfully disregarded a district court order to appear through counsel. As the court observed, "'[s]uch cavalier disregard for a court order is a failure, under Rule 55(a), to 'otherwise defend as provided by these rules'" (Id.)

ACA contends that it did not receive notice of the motion for default judgment or the order scheduling a hearing for February 10, 2005. This assertion, however, does not explain the failure to comply with the January 3, 2005 Order, which ACA acknowledges receiving. Indeed, no explanation for the violation of the January 3, 2005 Order has been tendered. Nor has ACA offered any justification for its failure to communicate with the Court on this matter prior to January 31, 2005. The fact that it was able to retain one of the leading law firms in this Commonwealth within days after default judgment was entered only serves to buttress the conclusion that ACA willfully disregarded the January 3, 2005 Order. See Jones v. Phipps, 39 F.3d 158, 165 (7th Cir. 1994) (declining to grant relief from a default judgment where defendant was unable to explain why she was able to secure counsel after a default judgment was entered, but not before).

ACA nonetheless contends that the Union's failure to provide it notice of its motion for default judgment and the hearing scheduled on its motion is sufficient evidence of the Union's own bad faith as to warrant setting aside the default judgment. The Union, pointing out that Rule 55(b)(2) requires notice only "[i]f the party against whom judgment by default is sought has

8

appeared in the action," asserts that notice was not required in these circumstances.[1] ACA, without addressing the question of whether notice was required under the circumstances presented here, argues that the fact that the Union had previously sent notices directly to Mr. Riker shows that the Union sought to gain an unfair litigation advantage.

The premise of ACA's argument is that the Union was aware that ACA continued to defend this litigation and nonetheless secured a judgment without informing ACA of its intended course of action. This premise, however, is belied by the fact that ACA did not respond to discovery requests sent directly to it in late December of 1994. Nor did ACA appear for a scheduled deposition of a third party in January of 2005, even though it knew the deposition had been scheduled. Furthermore, ACA had not responded to Atty. Greco's motion for leave to withdraw as counsel. Given the fact that it was undisputed that ACA had neither paid its retained counsel for two years nor contested the adequacy of the services rendered by Attorney Greco (which resulted in the first default judgment being set aside and the Union's summary judgment motion being denied), and given ACA's failure to attend a third-party deposition or respond to discovery requests directed to it, the Union had ample justification for

---

[1] ACA does not argue that the February 10, 2005 judgment is void because of the absence of notice contemplated by Rule 55(b)(2). Instead, ACA contends that the absence of notice is a factor to be considered in determining whether default judgment should be set aside. In this regard, a default entered without written notice is considered to be voidable, but not void. Planet Corp. v. Sullivan, 702 F.2d 123, 126 n. 2 (7th Cir. 1983); Natasha C. v. Visionquest, Ltd., No. CIV. A. 03-1903, 2003 WL 21999591, at *2 (E.D. Pa. Aug. 24, 2003).

believing that ACA did not intend to defend this matter further. Its failure to serve ACA with notice of its motion thus does not entitle ACA to set aside the judgment.

In summary, ACA flagrantly disregarded an Order of this Court essential to the management of this litigation. This type of behavior supports entry of default judgment.

The Union would clearly be prejudiced if the default judgment is vacated. The Union has assiduously and diligently pursued this case. ACA, on the other hand, has engaged in a pattern of dilatory conduct obviously calculated to impede the progress of this litigation. At the time the second default judgment was entered, this litigation was nearly five years old. A January 31, 2005 discovery deadline had been established. Inability to secure information during the discovery period "is obviously prejudicial to a plaintiff in his attempt to prosecute his claim and obtain a resolution of his lawsuit." Floyd, 2002 WL 1676311, at *1. The prejudice in this case is palpable, militating against granting relief from the judgment.

Even if prejudice were not present, however, relief from the judgment would be inappropriate. In this regard, the absence of prejudice does not entitle the obstreperous litigant to evade the consequences of its dilatory conduct. See Billy Steinberg Music, 129 F.R.D. at 489 ("The lack of prejudice, however, is not, by itself, sufficient to warrant the setting aside of the default.") Nor is the presence of an arguably meritorious defense sufficient to require setting aside the judgment. In this regard, our Court of Appeals in Kelly M. v. Luzerne Intermediate Unit, 71 Fed. Appx. 116, 118-19 (3d Cir. 2003), summarily affirmed the denial of a

motion to vacate a default judgment even though there was no prejudice to the plaintiff and an arguably meritorious defense was present where the defendant's failure to appear at hearings or respond to notices was culpable.

Finally, lesser sanctions would not be sufficient in this case. ACA had ample notice that failure to appear through counsel could result in default judgment. Notwithstanding such notice, it willfully disobeyed the January 3, 2005 Court Order. Under these circumstances, its dilatory conduct is not likely to be deterred by a sanction less severe than default judgment.

## III.    CONCLUSION

For the reasons set forth above, the motion to vacate the default judgment will be denied. An appropriate Order follows.

                  **s/ Thomas I. Vanaskie**
                  Thomas I. Vanaskie, Chief Judge
                  Middle District of Pennsylvania

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LOCAL UNION NO. 44, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, NORTHEASTERN PENNSYLVANIA,** : :<br>:<br>:<br>: | |
| Plaintiff : | |
| : | **3:CV-00-1060** |
| vs.   : | |
| : | **(CHIEF JUDGE VANASKIE)** |
| **ACA GREENHOUSES, INC.,**   : | |
| : | |
| Defendant   : | |

## O R D E R

**NOW, THIS 22nd DAY OF MARCH, 2006,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT** Defendant's Motion to Vacate Default Judgment (Dkt. Entry 71) is **DENIED**.

                                                  **s/ Thomas I. Vanaskie**
                                                  Thomas I. Vanaskie, Chief Judge
                                                  Middle District of Pennsylvania